IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RODNEY STEWART PRESLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO 07-0580-KD-M |
| | ) |
| **SHERIFF GROVER W. SMITH, in his** | ) |
| **Individual Capacity, and the ESCAMBIA** | ) |
| **COUNTY COMMISSION,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the court on defendant Escambia County Commission's motion for summary judgment (doc. 61), Sheriff Grover W. Smith's motion for summary judgment (doc. 65), plaintiff Rodney Stewart Presley's response (doc. 72) and defendants' reply (doc. 75). Upon consideration, and for the reasons set forth herein, defendants' motions for summary judgment are **GRANTED**.

I. Background

Presley filed his complaint against Sheriff Grover W. Smith and the Escambia County Commission alleging that the defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to the U.S. Constitution while he was a pre-trial detainee in the Escambia County Detention Center by failing to provide for his safety. Sheriff Smith is the sheriff of Escambia County, Alabama, and is responsible for the daily management and operation of the Escambia County Detention Center. He is sued in his individual capacity. The Escambia County Commission is responsible for providing funds for the Detention Center's operation and maintenance.

Presley was an inmate at the Detention Center. Presley alleges that on June 20, 2006, he was attacked by other inmates and sustained a head injury and brain damage. Presley alleges that the inmate violence resulted from Sheriff Smith's failure to adequately staff and maintain the Escambia County Detention Center and Escambia County Commission's failure to provide adequate funding for staffing and maintenance.

II. Findings of Fact[1]

Presley was booked into the Detention Center on May 3, 2006. He was a pretrial detainee on a charge of first degree burglary. Initially Presley was housed in the medical unit because of dental appliances from recent oral surgery. On May 24, 2006, he was moved to a cell unit. On May 29, 2006, a brawl occurred between an inmate and an officer in Presley's cell unit. The fighting spilled over into Presley's cell. The other inmates were locked down in their cells, however, Presley alleges that his cell door locks were not working at that time. Presley was not injured.

On June 3, 2006, Presley was moved to the gym which had been converted to house inmates. The inmates housed in the gym are classified as "general population, low observation" (doc. 68, Exhibit 8). Detention Center Administrator James Freeman testified that the gym contained "the better behaved inmates" and that these inmates were placed there only after staying in other jail units without a problem (doc. 62-5, p. 2).

---

[1] As it is required to do when resolving a motion for summary judgment, the court has construed the factual allegations in a light most favorable to the plaintiff. Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004) citing Burton v. City of Belle Glade, 178 F. 3d 1175, 1187 (11th Cir. 1999) (When ruling on a motion for summary judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.") However, the facts established for purpose of summary judgment may not be the actual facts established at trial. See Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995).

On June 20, 2006, during lunch, a fight occurred between Presley, Ashlion McCants and Willie McCants. The surveillance camera recording shows that the altercation between Presley, Willie and Ashlion began at 12:54:46 with Ashlion McCants walking toward Presley. Presley testified that he did not instigate the altercation nor did he hit Ashlion, although he may have pushed him. At 12:55:07, twenty-one seconds after it began, the altercation is over and Presley is lying on the floor.

At 12:56:08 the Detention Center staff responded. Specifically, Captain Freeman, the Detention Center administrator at the time, came to the gym when he heard a correctional officer yell out that there was a fight. When he arrived at the recently installed touch control panel to unlock the door, the touch panel did not work and he had to wait three to four minutes for an officer to arrive with a key. Freeman then unlocked the door and entered the gym with other officers and they attended to Presley. At 12:59:44 Presley was removed on a stretcher and taken to a hospital.

Presley testified that prior to this incident, he "really got along with everybody," "didn't have no problem with nobody other than them people attacking me," and had no problems with any correctional officers or other Detention Center staff. (Doc. 62-4, p.3). Presley testified that he had never been threatened by any inmate, nor had any arguments with any inmates. He also specifically testified that he had never been threatened by the McCants, although he had seen Ashlion punch another inmate in the face twice. Presley further stated that he had never made any complaint about Ashlion or Willie to Detention Center staff or reported Ashlion's behavior.

   III.   Legal Standard on Summary Judgment

Summary judgment should be granted only "if the pleadings, the discovery and

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

Once the moving party has satisfied its responsibility, the burden then shifts to the non-movant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment." Id. quoting Celotex, 477 U.S. at 323, 106 S.Ct. at 2552 (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton

---

[2] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:
> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

4

v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) *cert denied*, 507 U.S. 911, 113 S.Ct. 1259 (1993) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), *cert denied*, 543 U.S.1081, 125 S.Ct. 869 (2005).

    IV.    Analysis

Actions brought in federal court to address and remedy constitutional violations by a state actor are enabled through Section 1983, which provides as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

42 U.S.C. § 1983 (2008).

    A. Sheriff Smith

Sheriff Smith has raised the affirmative defense of qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacity if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vineyard v. Wilson, 311 F. 3d 1340, 1346 (11th Cir. 2002) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  "[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Kesinger ex rel. Estate of

Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004); see also Harris v. Coweta County, Ga., 433 F.3d 807, 811 (11th Cir. 2005).  In this case the parties do not dispute that Sheriff Smith was acting within his discretionary authority.  Thus, the burden "shifts to the plaintiff to show that qualified immunity is not appropriate." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  To make that determination, the court must address whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that Sheriff Smith's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).  If no constitutional right was violated, then "there is no necessity for further inquiries concerning qualified immunity.  Thus, the issue of whether Sheriff Smith is entitled to qualified immunity begins with a determination as to whether Presley's constitutional rights have been violated.

      To establish a claim under 42 U.S.C. § 1983 against Sheriff Smith in his individual capacity, Presley must allege and ultimately prove that (1) Sheriff Smith deprived him of a right, privilege, or immunity secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); Wideman v. Shallowford Cmty. Hosp., Inc., 826 F. 2d 1030, 1032 (11th Cir. 1987).  The parties do not dispute that Sheriff Smith was acting under color of law.  Therefore, the analysis will begin with the first prong: whether Sheriff Smith violated Presley's constitutional rights.

      Presley claims that Sheriff Smith in his individual capacity violated Presley's constitutional rights under the Eighth and Fourteenth Amendments to the U.S. Constitution to be free from a substantial risk of serious harm, specifically inmate-on-inmate violence.  Presley's

constitutional rights as a pre-trial detainee arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga</u>, 400 F.3d 1313, 1318 n.13 (11th Cir. 2005); <u>McDowell v. Brown,</u> 392 F.3d 1283, 1290 (11th Cir. 2004).  However, Presley's claims are subject to Eighth Amendment scrutiny because "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001) (en banc); <u>Gish v. Thomas</u>, 516 F.3d 952, 954 (11th Cir. 2008) ("The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons").

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).  In order to survive summary judgment, Presley "must produce sufficient evidence of (1) a substantial risk of serious harm; (2) Sheriff Smith's deliberate indifference to that risk; and (3) causation." <u>Purcell</u>, 400 F.3d at 1319 citing <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1582 (11th Cir.1995).  Moreover, "[w]hether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts.  For summary judgment purposes, we resolve all the truly disputed facts in accord with Plaintiff's view of the facts; but we, as judges, decide the legal consequences of the given facts, that is, whether the supposed facts amount to a violation of the Eighth Amendment." <u>Purcell,</u> 400 F.3d at 1320.

The Eleventh Circuit has held that the deliberate indifference prong has three components: (1) defendant's subjective knowledge of the risk of serious harm; (2) disregard for

that risk; and (3) disregard by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).  Deliberate indifference is not equivalent to negligence or carelessness.  The Supreme Court has adopted a "subjective recklessness as used in the criminal law" as the test for "'deliberate indifference' under the Eighth Amendment." Farmer, 511 U.S. at 839-40, 114 S.Ct. at 1980.  The Supreme Court expressly "reject[ed] ... an objective test for deliberate indifference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.  Thus, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F. 3d at 1319-1320 quoting Farmer, 114 S.Ct. at 1979; Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (stating that defendants must have subjective awareness of an "objectively serious need" and their response must constitute "an objectively insufficient response to that need."); Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (1997) ("[D]eliberate indifference is a stringent standard of fault, requiring proof that [an] actor disregarded a known or obvious consequence of his action.").  Also a "§ 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." Troupe v. Sarasota County, Florida, 419 F.3d 1160, 1165 (11th Cir. 2005) (citation omitted).

      In Presley's response, he alleges that Sheriff Smith's deliberate indifference to his safety is supported by the fact that Sheriff Smith failed to take adequate security measures by improperly staffing and maintaining the Detention Center.  In support, Presley points to the testimony from Captain Freeman, the Detention Center administrator at the time, and statements

from Sheriff Smith that they needed more staff at the Detention Center.[3]  However, both Sheriff Smith and Captain Freeman also testified that while they needed more staff and were in fact seeking more funding for staff,[4] the staffing level in June 2006 was adequate to provide security at the Detention Center.  Presley has not presented evidence from any knowledgeable person to refute Sheriff Smith's and Captain Freeman's statements, i.e., that the staffing in 2006 was adequate.[5]  Purcell, 400 F. 3d at 1322, n.18 ("No expert testified that the Jail, given its inmate capacity, was understaffed.").  Moreover, even if more officers were needed at the Detention Center, Presley's argument that Sheriff Smith was deliberately indifferent to the need for additional staffing is undercut by the uncontested evidence that Sheriff Smith was consistently seeking more funding for additional staff during his three-year tenure as Sheriff.  Also, as to maintaining security, it is undisputed that since becoming sheriff in 2003, Sheriff Smith had worked to have broken locks fixed [6] and had installed additional surveillance cameras with

---

[3] As to staffing on the day of Presley's injury, Presley argues that the Detention Center was short-staffed because one officer was on a transport.  However, the evidence does not support this claim.  Rather, Captain Freeman testified that he was short one officer because the officer was sent to the hospital with Presley and not that the Center was short-staffed before the incident.

[4] Captain Freeman recommended to Sheriff Smith that he needed at least two more officers per shift for a total of eight, to be "more efficient and effective because of our transports" (doc. 72-2, p. 4-6).  In July 2006 the Commission approved funding for four new officers (doc. 72-2, p. 9-10).

[5] Presley quotes testimony from former Sheriff Hawsey which generally discusses the function of various officers at the Detention Center.  However, Presley fails to relate Hawsey's opinion of staffing as it presumably existed in 2003, to the staffing as it existed in 2006.  The court finds it unhelpful for Presley to quote from depositions and then leave it to the court to draw conclusions regarding what factual assertions this evidence supports.

[6] Presley alleges that "inferior and inadequate cell locks were used in construction as cost-cutting measures".  The Detention Center was built in 1993.  A cost-cutting measure that occurred fifteen years ago does not give rise to an objectively substantial risk of serious harm to

9

improved viewing throughout the Detention Center.[7]  Thus no reasonable juror could find, based on the relevant evidence presented by Presley, that Sheriff Smith deliberately or recklessly disregarded the safety needs of the inmates at the Detention Center.

Presley also relies heavily on grand jury reports from 1999 through 2006 which indicate a need for additional staffing at the Detention Center and note a problem with the locks.  This evidence is also insufficient to support a claim of deliberate indifference by Sheriff Smith.  The grand jury report provides suggestions from a cross-section of the community concerning ways to improve the Detention Center.  The report is not evidence of constitutionally deficient staffing level at the Detention Center.  Moreover, as previously stated, the evidence indicates that Sheriff Smith was seeking funding for new staff on a regular basis and that the staff had increased over the time period covered by the grand jury reports.

While there had been isolated incidents of fights by inmates, there is no evidence that inmate on inmate violence was the norm or that Sheriff Smith was indifferent to the situation.  It simply is not possible, nor is it constitutionally required, to have a violence-free facility.  "In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail." Purcell, 400 F. 3d at 1323.  Also, a "prison custodian is not the guarantor of a prisoner's safety." Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir.1990).  Sheriff Smith had a classification

---

Presley in 2006; especially since there is evidence that the cell locks were recently upgraded: Captain Freeman's testimony, the newspaper articles, and the grand jury reports.

[7] The evidence indicates that Sheriff Smith installed a video camera providing twenty-four hour surveillance in the gym where Presley was housed.  In his complaint, Presley quotes a newspaper article dated February 8, 2006, which reported that Smith now had thirty-two color cameras that monitored twenty-four hours a day seven days a week.  The facility previously only had ten black and white cameras.

system in place that was followed.[8] It is undisputed that neither Presley, Ashlion McCants, nor Willie McCants had engaged in any prior reported misbehavior. These three inmates were considered low security threats. Thus, there is insufficient evidence that Sheriff Smith had a subjective knowledge of an unreasonable risk of harm to prisoners in the gym facility in which Presley was housed. Based on the evidence presented, the evidence simply would not support a finding that Sheriff Smith recklessly turned a blind eye to the security needs of the Detention Center.

B. Escambia County Commission

"[T]o impose § 1983 liability on [the County Commission, Presley] must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell, 392 F.3d at 1289 citing City of Canton v. Harris, 489 U.S.

---

[8] The undisputed evidence shows that the Detention Center has a written policy of classifying and assigning inmates to the housing unit of the Center most appropriate for his/her security and safety. The criteria for classification are as follows:
> whether the inmate constitutes an escape risk, whether the inmate is violent or is known to have been violent in the past, whether the inmate is suicidal, whether the inmate is a sex offender, whether the inmate is high profile, whether the inmate has known enemies, the inmate's current offense or conviction, the inmate's history of institutional misconduct, whether the inmate has medical problems, whether the inmate has or exhibits mental health problems, and alcohol or drug use by the inmate.

(doc. 62-10).

Captain James Freeman, Detention Center Administrator at the time of the incidents, explained the classification as follows:
> At the time most all inmates that came into the jail were placed in unit four. After being observed, their behavior, for a period of two to three weeks then they were worked into unit five. If they behaved and didn't cause any problem in unit five then they were placed up in the gym. The gym was nothing but some of the better behaved inmates at the jail.

(doc. 62-5).

373, 388, 109 S. Ct. 1197 (1989); Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018 (1978). Powell v. Barrett, 496 F.3d 1288, 1318 (11th Cir. 2007) (citation omitted) ("The question of municipal liability under § 1983 is relevant only when a constitutional violation has occurred.")   In regard to the County Commission, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Board of County Com'rs of Bryan County, 520 U.S. at 404, 117 S.Ct. at 1388.  To demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice." Sewell v. Town of Lake Hamilton, 117 F. 3d 488, 489 (11th Cir. 2004), cert. denied, 522 U.S. 1075, 118 S.Ct. 852 (1998).

Under Alabama law, "counties possess some duties with respect to county jails," Turquitt v. Jefferson County, Ala., 137 F.3d 1285, 1289 (11th Cir. 1998), but they have no authority to supervise inmates or operate Detention Centers.  Instead, the counties' duties "are limited to funding the operation of the jail and to providing facilities to house the jail." Stark v. Madison County, 678 So.2d 787, 787 (Ala. Civ. App.1996).  Under Ala. Code §§ 11-14-10, 11-14-13, county commissions are charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Turquitt, 137 F. 3d at 1289-90; see also Marsh, 268 F.3d at 1028-90 ("Therefore, the County will have violated Plaintiffs' Eighth Amendment rights if its failure to maintain the Jail constituted deliberate indifference to a substantial risk of serious harm to the prisoners.").

Presley claims that the County Commission is liable because it engaged in chronic underfunding which resulted in understaffing at the Detention Center. Presley claims that the understaffing caused the altercation and his subsequent injuries. However, Presley's claim suffers from a lack of proof. First, there is insufficient evidence to sustain Presley's burden that the Detention Center was underfunded to an extent that exhibits deliberate indifference by the County Commission to the Detention Center's security and safety. To support his claim of deliberate indifference by the County Commission, Presley has presented news accounts of an escape in July 2006, and testimony regarding a fight between an officer and an inmate in May of 2006. This is not sufficient to show a pervasive and sustained security problem at the Center that could have been resolved by additional funding. Presley also relies on the testimony of a previous Sheriff, who left office in 2003, which details problems that he had at the Center and his difficulty in obtaining funding from the County Commission. Absent sufficient evidence of pervasive inmate violence in 2006, evidence of problems occurring before 2003 is not relevant to the present inquiry. Presley also points to the grand jury reports. Again, while the grand jury offers suggestions to improve governmental functions, its report does not provide support for a finding that the staffing was unconstitutionally deficient.

In sum, there is insufficient evidence of a policy of underfunding the Detention Center to the extent that it shows deliberate indifference to the safety of the inmates. See McDowell, 392 F.3d 1283 at 1293 ("In the instant case, the record is barren of any evidence of implementation of an intentionally malevolent or impermissible policy by the Board so as to authorize a cause of action against Dekalb County under 42 U.S.C. § 1983. The fact that the Board's budget practices resulted in understaffing does not amount to a purposeful disregard which would violate any

citizen's constitutional rights.")

     V.     <u>Conclusion</u>

It can hardly be disputed that a jail can always be made safer by increasing staff and providing more modern facilities. However, it is not a constitutional violation for the responsible parties to fail to provide premium facilities and staffing. It is only when responsible parties are deliberately or recklessly indifferent to the safety of inmates does liability attach. Viewing all the evidence in the light most favorable to Presley, there is insufficient evidence in the record to show that the conditions at the Escambia County Detention Center posed the substantial risk necessary for a violation of the federal Constitution. Accordingly, defendants' motions for summary judgment (docs. 61, 65) are **GRANTED**.

**DONE** and **ORDERED** this the 21st day of August, 2008.

       **s/ Kristi K. DuBose**
       **KRISTI K. DuBOSE**
       **UNITED STATES DISTRICT JUDGE**